## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO MAURICIO-PENA,** | : | **No. 3:26cv943** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. RIFE, in his official** | : | |
| **Capacity as Philadelphia acting** | : | |
| **Field Office Director for U.S.** | : | |
| **Immigration and Customs** | : | |
| **Enforcement,** | : | |
| **Respondent** | : | |

## MEMORANDUM ORDER

Before the court is a petition for writ of habeas corpus filed by Antonio Mauricio-Pena pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner challenges his present detention at the Moshannon Valley Processing Center by Immigration and Customs Enforcement ("ICE") and the Department of Homeland Security ("DHS").[1] For the reasons set forth below, the petition will be granted in part. The respondent will be directed to provide the petitioner with a bond hearing before an immigration judge ("IJ") within 14 days. If a bond hearing is not

---

[1] While the Moshannon Valley Processing Center's mailing address suggests that it is located in Philipsburg, Centre County, the facility is physically located in Decatur Township, Clearfield County, and is thus situated in the Western District of Pennsylvania. See 28 U.S.C. § 118(c).

scheduled within such time, the petitioner will be released on his own recognizance. [2]

Mauricio-Pena is a native and citizen of the Dominican Republic. (Doc. 4-2, Resp. Ex. 1, First I-213, at 2). Petitioner's marital status appears to be disputed.[3] (Doc. 4-6, Resp. Ex. 5, I-130, at 3). According to the respondent's records, petitioner is either unemployed or retired. (Doc. 4-3, Resp. Ex. 2, Second I-213, at 1). Beyond that, the record contains little, if any, information regarding Mauricio-Pena's current or prior employment history.

Mauricio-Pena entered the United States of America in November 1999 at Aguadilla, Puerto Rico without being admitted or paroled. (Doc. 4-2, Resp. Ex. 1, First I-213, at 2). He was later paroled into the United States and has remained

---

[2] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mauricio-Pena filed the instant petition while detained at ICE Enforcement and Removal Operations ("ERO") office in York, Pennsylvania, which is located in the Middle District of Pennsylvania. It appears, however, that the petitioner is currently detained at the Moshannon Valley Processing Center, which is physically situated in the Western District of Pennsylvania. Under these circumstances, this court will assume jurisdiction over the petition "since it would have been able to exercise jurisdiction on the date that the petition was filed." Khalil v. President, United States, 164 F.4th 259, 269 (3d Cir. 2026) (internal quotation marks and quotation omitted). The petitioner asserts that his continued detention violates his right to due process. He also asserts that the wrong provision of the Immigration and Nationality Act ("INA") is being used to justify his detention. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

[3] Both of Mauricio-Pena's Forms I-213 identify him as single. (Doc. 4-2, Resp. Ex. 1, First I-213, at 1; Doc. 4-3, Resp. Ex. 2, Second I-213, at 1). Nonetheless, petitioner's Form I-485 indicates that he is married to a U.S. citizen. (Doc. 4-7, Ex. 6, Form I-485 at 10).

Petitioner further represented in his Form I-485 that he has six (6) children. (Id. at 12). The record, however, contains no additional information regarding petitioner's children.

in the country for approximately 27 years. (Doc. 4-3, Resp. Ex. 2, Second I-213, at 2).

On July 29, 2012, petitioner was charged in the Commonwealth of Puerto Rico First Instance Court, Superior Chamber of San Juan with conjugal abuse. (Doc. 4-2, Resp. Ex. 1, First I-213, at 2).  A month later, the Aguadilla Criminal Alien Program ("CAP") Unit identified petitioner at the Sabana Hoyos Correctional Facility at Arecibo, Puerto Rico. (Id.)  Petitioner was thereafter charged under Section 212(a)(6)(A)(i) of the INA as an alien present without admission or parole. (Id.)

On October 31, 2012, the conjugal abuse charges were dismissed. (Id.) Petitioner was subsequently served with a Notice to Appear with a hearing date to be set. (Doc. 4-3, Resp. Ex. 2, Second I-213, at 3; Doc. 4-4, Resp. Ex. 3, Notice to Appear at 1).  On June 6, 2017, an IJ in Boston, Massachusetts administratively closed petitioner's immigration case. (Doc. 4-3, Resp. Ex. 2, Second I-213, at 3).

On or about April 3, 2026, ICE encountered Mauricio-Pena following an interaction with the Penbrook Police Department near Harrisburg regarding his driver's license, or lack thereof. (Doc. 4-3, Resp. Ex. 2, Second I-213, at 2). According to respondent, a records check revealed that petitioner lacked legal status in the United States and reflected multiple denial of immigration

3

applications, including the denial of at least one I-130 petition based on suspected marriage fraud.[4] (Id.)

Then, on April 13, 2026, ICE conducted an operation to locate petitioner at his last known address in Harrisburg. (Id.) ICE officers observed Mauricio-Pena exit his residence and operate a vehicle. (Id.) They followed him until they identified a safe location to conduct a vehicle stop. (Id.) Officers then initiated the stop. (Id.) Following his arrest, Mauricio-Pena was transported to the ERO office in York, Pennsylvania for processing. (Id.) Petitioner is currently detained at the Moshannon Valley Processing Center. (Doc. 4-5, Ex. 4, Notice to EOIR: Alien Address).

With his petition for writ of habeas corpus, Mauricio-Pena argues that he is unlawfully detained as the result of the government's misapplication of 8 U.S.C. §

_____

[4] On May 30, 2025, an I-130 Petition for Alien Relative and I-485 Application to Register Permanent Resident or Adjust Status were filed with the U.S. Citizenship and Immigration Services ("USCIS") on petitioner's behalf. (Doc. 4-8, Ex. 7, Notice of Decision; Doc. 4-9, Ex 8, Notice of Decision). On March 13, 2026, USCIS denied both the petition and the application. According to the respondent's record, the I-130 petition was denied because petitioner, petitioner's spouse, or both failed to appear for a scheduled USCIS interview. (Doc. 4-9, Resp. Ex. 8, Notice of Decision, at 1). The petition was also denied because no correspondence was submitted explaining their failure to appear. (Id.) Accordingly, USCIS deemed the petition abandoned. (Id.)

Petitioner asserts that he failed to attend the USCIS interview because his attorney in Massachusetts, who allegedly handled the filing of the I-130 petition and I-485 application, failed to notify him of the interview date. (Doc. 1, ¶ 4; Doc. 5, Traverse at 2). According to petitioner, he did not willingly or intentionally fail to appear for the interview and he intends to reschedule it should he be released from ICE custody. (Doc. 5, Traverse at 2).

1225(b)(2)(A), a mandatory detention statute.  Per the petitioner, his detention is governed by 8 U.S.C. § 1226(a), a discretionary detention statute.  Petitioner further argues that, due to this misclassification, his due process rights are being violated because he has not been provided with a bond hearing.  Petitioner requests his immediate release from detention.

On behalf of Respondent John Rife, the United States Attorney's Office for the Middle District of Pennsylvania asserts that 8 U.S.C. § 1225(b)(2)(A) applies to the petitioner and that his detention does not violate the INA or the Due Process Clause of the Fifth Amendment.[5]  Two appellate decisions align with the respondent's reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).  This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[6]  See Cunha v.

---

[5] Petitioner contends that John Rife, the Acting Director of the Philadelphia Field Office of ICE's Enforcement and Removal Operations division, is the proper respondent because he was petitioner's immediate custodian at the time the petition was filed. (Doc. 1, ¶ 20). Respondent does not challenge these representations.  Therefore, John Rife is deemed the proper respondent in this matter.

[6] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa.

Freden, No. 25-3141-PR, --- F. 4th ----, 2026 WL 1146044, at *4, *14–23 (2d Cir. Apr. 28, 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, --- F. 4th ----, 2026 WL 1223250, at *9–21 (7th Cir. May 5, 2026) (Lee, J.) (portion of lead opinion not joined by concurring judge).

Furthermore, the respondent indicates that he "recognizes that this Court and other jurists of this District have recently rejected Respondent's arguments on the issues presented below regarding 8 U.S.C. § 1225(b) detention of petitioners such as Mauricio-Pena." (Doc. 4, Resp. at 2) (collecting cases). The court thus reads the response as not contesting the facts of Mauricio-Pena's petition and only preserving a narrow Section 1225(b)(2)(A) versus Section 1226(a) legal argument for appellate purposes.

With respect to this matter, the court sees no reason to deviate from Hernandez Alvarez, Cunha, or its prior decisions.[7] Mauricio-Pena entered the

---

Dec. 10, 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.); Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

[7] The Third Circuit Court of Appeals heard oral argument regarding this issue just today, May 11, 2026, based on the government's appeals in Morocho v. Jamison, No. 5:25-CV-05930-

United States without being admitted or paroled.  He was later paroled into the United States, however, and remained in the country for nearly 27 years. Because the parties frame Mauricio-Pena's detention as governed solely by these two statutory provisions, the court concludes that Section 1226(a), not Section 1225(b)(2)(A), applies to petitioner's detention.[8]

Under Section 1226(a), a noncitizen in removal proceedings *may* be detained pending a decision on removal. 8 U.S.C. § 1226(a).  However, pending a removal decision, the noncitizen also may be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).  Pursuant to Section 1226(a) and its attendant regulations, the petitioner may receive a bond hearing.  One will be ordered in this case.

---

JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025), app. filed sub nom. Morocho v. Warden Phila. FDC, No. 26-1150 (3d. Cir. Jan 22. 2026) and Andrade v. Rose, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026), app. filed sub nom., De Andrade v. Director Phila. Field Off. Immig., No. 26-1454 (3d Cir. Mar. 2, 2026).

[8] Mauricio-Pena is an "applicant for admission" under Section 1225(a), but he is not "seeking admission" because he is not requesting lawful entry into the United States after inspection and authorization. Cunha, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026).  Moreover, the government's reading of Section 1225 "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings [v. Rodriguez, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." Id.

As for the constitutional issues raised in Mauricio-Pena's petition, it is undisputed in this case that he entered the United States illegally without being initially admitted or paroled.  People who enter this country without legal authorization are not stripped immediately of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013).  That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To reiterate, "[n]o person," including the petitioner, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 721 (2001) (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

Under the facts presented, a consideration of the procedural due process factors in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) also leads to a conclusion that Mauricio-Pena's imprisonment at the Moshannon Valley Processing Center without a bond hearing under a mandatory detention statute is a violation of his constitutional rights.[9]

The order issued in this case will not grant Mauricio-Pena outright release from the Moshannon Valley Processing Center as requested.  Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing with a neutral IJ where the government will bear the burden to justify his continued detention by clear and convincing evidence that "must be

---

[9] Those factors are 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. <u>Mathews</u>, 424 U.S. at 335.  First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." <u>Cunin v. McShane</u>, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. <u>See id.</u> ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); <u>see</u> <u>also</u> <u>Patel v. O'Neil</u>, No. 3:25-CV-2185, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (citing <u>Bethancourt Soto v. Soto</u>, No. 25-CV-16200, 807 F. Supp. 3d 397, 409 (D.N.J. 2025); <u>Quispe v. Rose</u>, No. 3:25-CV-02276, 2025 WL 3537279, at *7 (M.D. Pa. Dec. 10, 2025)).  As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far for the reasons discussed in the body of this memorandum.

individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (citation omitted).  Given the application of this standard in other contexts, this is the standard that must be applied by the IJ. See id.  ("Even so, we see no basis for abandoning the settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof.").

The court will add one caveat.  Based on the lack of evidence of criminal activity or risk of flight provided in response to the habeas petition, if the government does not provide Mauricio-Pena with a bond hearing within 14 days in accordance with this memorandum, the petitioner will be ordered released from the Moshannon Valley Processing Center on his own recognizance.[10]

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Antonio Mauricio-Pena's petition for writ of habeas corpus, (Doc. 1), is **GRANTED** in part;

---

[10] Mauricio-Pena's request for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 is not yet ripe for disposition.  The Third Circuit recently confirmed that a habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the EAJA, 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 432 (3d Cir. Feb. 2, 2026).  Mauricio-Pena will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

2) Mauricio-Pena's detention is not governed by 8 U.S.C. § 1225(b)(2)(A) and violates his right to due process of law;

3) Respondent shall, **within 14 days of the date of this order,** provide Mauricio-Pena with an individualized bond hearing in accordance with the analysis in the memorandum order;

4) If Mauricio-Pena does not receive a bond hearing within the 14-day period, he shall be released **no later than May 26, 2026 at 12:00 noon** under the same circumstances that existed prior to his detention, including, release: (1) within the area near where petitioner lives or was employed; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by respondent or by any contracted or affiliated facility;

5) On or before **May 26, 2026 at 4:00 PM**, respondent shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Mauricio-Pena has either been provided with a bond hearing or has been released from custody;

11

6) Mauricio-Pena may file a motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 within thirty (30) days of final judgment; and

7) The Clerk of Court is directed to **CLOSE** this case.

Date: 5/11/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court